UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------x
ERIC BREWER,
                                 :

                Petitioner,        REPORT & RECOMMENDATION

                                 :

        -against-                  06 Civ. 10209 (SHS)(MHD)

                                 :

WILLIAM LAPE, Superintendent,
Marcy Correctional Facility,     :

                                 :

                Respondent.
--------------------------------x

TO THE HONORABLE SIDNEY H. STEIN, U.S.D.J.:


        Pro se petitioner Eric Brewer seeks a writ of habeas corpus to
challenge his 2003 conviction in New York State Supreme Court, New
York County, on a single count of criminal possession of a weapon
in the third degree. The court sentenced Brewer to a seven-year
prison term. He served approximately five and one-half years of
that sentence, and is currently released on parole.


        Brewer asserts five grounds in support of his application.
First, he contends that he was arrested absent probable cause, in
violation of the Fourth Amendment. Second, he argues that a written
statement that he provided to the police was coerced, in violation
of the Fifth Amendment. Third, he argues that the Appellate
Division violated his due-process rights in considering his appeal.

1

Fourth, he contends that his conviction was against the weight of the evidence. Finally, he asserts that he was denied the effective performance of trial counsel, in violation of the Sixth Amendment.

Respondent opposes the petition. He argues that the first claim is meritless; the second claim is procedurally barred, unexhausted and in any event meritless; the third claim is meritless; the fourth claim does not present a federal constitutional question, is unexhausted and, even if interpreted to raise a constitutional issue, is meritless; and the fifth claim is unexhausted, procedurally barred and meritless.

For the reasons that follow, we recommend that the writ be denied and the petition dismissed.

Prior Proceedings

Brewer's conviction stems from an encounter with police officers on September 2, 2002. Two officers observed Brewer in what appeared to be a blood-stained shirt arguing with a woman who was leaning against a car. When the officers approached the couple, Brewer and the woman got into the car and drove away. The police followed, and shortly thereafter Brewer exited the car and ran to

2

the rear entrance of a housing development, where one of the police officers observed him drop a gun on the ground. Brewer was taken into custody, read his <u>Miranda</u> rights, and provided a statement to the police.

A. <u>Pre-trial Proceedings</u>

Brewer was indicted by a New York County grand jury on September 9, 2002. The indictment charged him with one count each of criminal possession of a weapon in the second and third degrees. (Decl. of Luke Martland, Esq., in Opp'n to Pet. for a Writ of Habeas Corpus, executed Dec. 11, 2006, Ex. B at 2).

Petitioner moved before trial to suppress certain items of physical evidence, namely the gun that he had discarded and the shirt that he was wearing when he was arrested. He also sought to suppress his statement to the police. At a hearing on the motion, New York City Police Officers Marianela Tejada and Tamas Balatoni, the officers who encountered Brewer on September 2, were the only witnesses to testify (H. Tr. 8, 52, 77).[1] Following their testimony, the court (Hon. Charles Solomon, S.C.J.) denied Brewer's

---

[1] "H. Tr." refers to the pre-trial suppression hearing held in petitioner's case on January 9 and 10, 2003.

3

motions. Justice Solomon determined that the police were justified in approaching Brewer after observing him engaged in a heated argument with a woman while wearing a shirt with what appeared to be blood on it. (H. Tr. 101-02). He also found that once Brewer departed in a car, the officers' decision to follow him was "justified and proper and reasonable". (H. Tr. 102). Justice Solomon concluded that the officers were similarly justified in chasing Brewer after he exited the vehicle. (Id.). Finally, after one of the officers observed Brewer discard a handgun, the officers had probable cause to arrest him, and therefore the gun and shirt were seized pursuant to a lawful arrest. (Id.). As for Brewer's written statement to the police, Justice Solomon found that he had been advised of and waived his constitutional rights, and that the State had established the voluntariness of Brewer's statement beyond a reasonable doubt. (H. Tr. 103).

B. The Trial

The trial commenced on January 14, 2003 before the Honorable Roger S. Hayes, S.C.J., and a jury. (Tr. 1).[2]  The State called as witnesses officers Tejada and Balatoni, as well as New York City

---

[2] "Tr." refers to the transcript of petitioner's trial.

Police Detective Desmond Stokes and Mr. Kenneth McAllister, with whom petitioner had had an altercation prior to his arrest on September 2. Brewer testified on his own behalf as the only defense witness.

Officers Tejada and Balatoni testified that on the evening of September 2, 2002 they were patrolling in uniform in a marked police car. (Tr. 5, 94-95). At approximately 7:00 P.M. the officers were driving south on Second Avenue between 105th and 106th Streets in Manhattan, when Officer Tejada saw petitioner arguing with a woman who was leaning against the passenger side of a parked vehicle. (Tr. 7-8 , 96). As the patrol car pulled parallel to the vehicle, Officer Tejada noticed that the petitioner's shirt appeared to have blood stains on the chest area. (Tr. 9. See also Tr. 97). Officer Tejada notified Officer Balatoni, who was driving the patrol car, and Balatoni stopped the car, but as the officers exited the car the couple got into their vehicle and began to drive south on Second Avenue. (Tr. 10-11, 96, 98).

The officers got back into their patrol car and pursued the vehicle with their lights and sirens on. (Tr. 11, 96). The couple's vehicle slowed as it reached 102nd Street, and petitioner exited and began running west on 102nd Street, while grabbing the right

side of the waistband of his pants. (Tr. 12-13, 98-99). Officer
Balatoni drove the patrol car down 102nd street into oncoming
traffic to pursue petitioner. (Tr. 14, 99). Petitioner turned left
and ran towards the rear of a housing development located on 102nd
Street between Second and Third Avenues, and the officers exited
the patrol car to chase him. (Tr. 14, 100).

Officer Balatoni testified that petitioner ran to the rear
door of the housing development and attempted to open the door, but
the door was locked. (Tr. 101). Officer Balatoni, who had been
following directly behind petitioner, drew his weapon and
instructed petitioner not to move. (Tr. 102). Petitioner turned to
his right, removed a weapon from his waistband, and dropped it on
the ground approximately two feet from where he was standing. (Tr.
102-03, 106-07). Officer Balatoni then instructed petitioner to lie
down on the ground, and petitioner complied. (Tr. 103). Officer
Tejada arrived a few seconds later and handcuffed Brewer, and
Officer Balatoni retrieved the gun. (Tr. 16-17, 104).

Officers Tejada and Balatoni testified that Brewer was then
taken to a nearby precinct station, where they interviewed him.
(Tr. 27, 108-09). Officer Tejada testified that she began the
interview by reading Brewer his Miranda rights, and Brewer wrote

the word "yes" and initialed next to each warning on a form to indicate that he understood each notification. (Tr. 27, 30-32. See also Tr. 110). Shortly thereafter, Brewer wrote a statement in which he admitted to disposing of a gun behind a housing development after he was unable to enter the building to dispose of it. (Tr. 32-33, 110-11). Officer Tejada testified that no promises or threats were made to petitioner prior to him writing the statement, nor was any force used to obtain the statement. (Tr. 33-34).

On cross-examination, the officers testified that once Brewer had been handcuffed, Officer Balatoni called for back-up and provided a description of the vehicle in which Brewer had ridden so that other officers in the area could locate it. (Tr. 126-27). Other officers soon found the vehicle, in which the woman with whom Brewer had been arguing –– Rhonda McAllister –– as well as her sister were sitting. (Tr. 37-38, 124, 127). The women were arrested for criminal possession of a weapon, although they were not charged with that crime, but instead issued summonses and released. (Tr. 38, 125, 129).

Detective Stokes, a firearms examiner for the New York City Police Department, testified that he had examined the gun that had

been retrieved from petitioner. (Tr. 133-34, 138). He testified that the gun was operable, as demonstrated by test-firing it four times. (Tr. 137, 143). Moreover, two of those discharges utilized ammunition cartridges that had been retrieved along with the gun. (Tr. 139-40, 142).

Mr. Kenneth McAllister was Ms. Rhonda McAllister's estranged husband. He testified for the State regarding an altercation that he had had with petitioner earlier in the afternoon on September 2, 2002. (See Tr. 62). Mr. McAllister testified that his wife had been dating petitioner for approximately four years, after her separation from Mr. McAllister. (Tr. 63). At approximately 3:00 or 4:00 P.M. on September 2 Mr. McAllister spoke by phone with his wife, and they argued about one of their daughters. (Tr. 62-64). Petitioner was with Ms. McAllister during the conversation, and objected to some of the comments that he had overheard Mr. McAllister make about him during the conversation. (Tr. 65). Petitioner spoke with Mr. McAllister on the phone, and said to Mr. McAllister "I'm going to see you when I see you." (Tr. 66). Mr. McAllister replied that petitioner could see him then, and he drove to Ms. McAllister's house. (Tr. 64, 66-67).

Mr. McAllister testified that when he arrived at his wife's

8

house, his wife, petitioner and one of petitioner's male friends were standing outside. (Tr. 67). Mr. McAllister and petitioner engaged in fisticuffs, with Mr. McAllister throwing petitioner against a car and punching him in the face until petitioner's nose began to bleed. (Tr. 67-69). The men were then separated by petitioner's friend and Mr. McAllister's father-in-law, who had accompanied Mr. McAllister to his wife's house. (Tr. 67, 69). Mr. McAllister testified that after the two men were separated petitioner said to him "I'm gonna kill you. I'm gonna get you." (Id.). Mr. McAllister then left to return to his home. (Tr. 70).

Mr. McAllister testified that between 9:30 and 10:00 P.M. that evening he received a call notifying him that his wife, her sister and petitioner had been arrested. He traveled to the police precinct at which they were being held and gave an officer a statement describing his altercation with petitioner. (Tr. 70-72). He testified that while he was at the precinct he spoke with his wife's sister, who told him that she and Ms. McAllister had driven with petitioner to drop off his friend in Manhattan. (Tr. 73). They stopped a few times on their way, and at one point Ms. McAllister had wanted to search Brewer before he got back into the car, prompting the argument that the police officers observed. (Tr. 73-74). After Mr. McAllister provided his statement, Ms. McAllister

9

and her sister were released from custody. (Tr. 75).

Finally, Brewer testified on his own behalf. He stated that at approximately 2:30 P.M. on September 2, 2002 he had had an altercation with Mr. McAllister outside of the apartment of his girlfriend, Rhonda McAllister. (<u>See</u> Tr. 163, 168-69). Brewer testified that Mr. McAllister had pushed him in the chest, but that his friend Jayson[3] and Ms. McAllister had separated the two men. (Tr. 169). Jayson told Mr. McAllister that he should leave, and eventually Mr. McAllister did so. (Tr. 169-70). Then Brewer, Jayson, Ms. McAllister and her sister got into Ms. McAllister's car to drive Jayson home. (Tr. 171).

Brewer testified that instead of driving directly to Jayson's home, they had stopped at a pizza restaurant at 105th Street and Second Avenue, so that Ms. McAllister and her sister would not learn the exact location at which Jayson lived. (Tr. 171). Brewer walked Jayson to his home at Second Avenue and 102nd Street, and then returned to where he had left Ms. McAllister and her sister. (<u>Id.</u>). Ms. McAllister was standing outside the car smoking, and her sister, a non-smoker, was sitting inside the car. (<u>Id.</u>). Ms.

---

[3] We refer to petitioner's friend by his first name only, as no other identifying information was provided at trial.

McAllister told Brewer that she had ordered a pizza and asked him to pay for it. (Tr. 171-72). At that point, Brewer realized that he did not have money to do so because he had given Jayson $50 dollars to pay for a cab ride earlier in the day, and Jayson had not returned his change. (Tr. 172, 175). Ms. McAllister became upset, and so Brewer walked over to her, pulled her towards him and kissed and hugged her. (Tr. 172). He noticed a female police officer in a car that was stopped at a nearby traffic light observing them, but the window of the patrol car was closed and the officer did not say anything. (Tr. 172, 173-74). Brewer then instructed Ms. McAllister to drive to 102nd Street, so that he could retrieve his change from Jayson. (Tr. 174). Ms. McAllister drove Brewer and her sister to 102nd Street, where Brewer exited the car and began jogging towards the building in which Jayson lived, because it had begun to rain. (Tr. 174-75).

When Brewer reached the back door of Jayson's building, the door would not open. (Tr. 176). He testified that he turned with his head down to avoid the rain, took approximately four steps and ran into Officer Balatoni, who was pointing a gun at him. (Id.). He put his hands up, saw Officer Tejada round the corner of the building with her gun drawn, and complied with Officer Balatoni's instruction to lie on the ground. (Id.). At that point, he saw a

11

third officer, who was wearing black gloves. (Id.). Officer Tejada was investigating an area near the building that contained wet cardboard, and she asked Officer Balatoni to handcuff Brewer. (Tr. 176-77).

Once Brewer was handcuffed, he was taken by the third officer and placed in the rear of a police car. (Tr. 177). Brewer testified that the officer also got into the back of the car and punched him in the face, causing him to bleed and bend forward to hide his face. (Id.). Brewer testified that when he bent over, he got blood on his shirt. (Tr. 178). The officer continued to hit him in his ribs, until two police officers got into the front seat of the car. (Id.). Brewer was driven to 102nd Street and Second Avenue, where he saw his girlfriend being arrested. (Tr. 179). He was then driven to a nearby police precinct. (Id.).

Upon arriving at the precinct, Brewer testified, he was left in a room for approximately three and one-half hours, during which time he could see the officer who had assaulted him "fixing his gloves." (Tr. 180). He also briefly saw his girlfriend and her sister brought into the precinct in handcuffs, and both of the women were crying. (Tr. 182). Eventually Officer Tejada entered and told him that he, Ms. McAllister and her sister were all under

arrest for criminal possession of a weapon. (Id.). Brewer denied that he had had a weapon, but the officer said that if Brewer "cooperate[d]" with her, Ms. McAllister and her sister would be released that evening and he would be released the next day. (Id.). Brewer said that he agreed to cooperate. (Tr. 180-81).

Brewer testified that approximately an hour later Officer Tejada returned and took him to an interrogation room with a "two-way mirror," behind which two plain-clothes and two uniformed officers sat. (Tr. 181). Officer Balatoni gave Brewer a form with the Miranda warnings printed on it, and told him to read the form himself and write the word yes and his initials next to each warning, which he did. (Id.). Brewer testified that Officer Balatoni told him that he would let Ms. McAllister and her sister go and arrange for him to be released on a small bail if he would write a statement that Officer Balatoni dictated. (Id.). Petitioner then wrote the statement as Officer Balatoni directed. (Tr. 182).

Following summations by both sides, the court submitted charges of criminal possession of a weapon in the second and third degrees to the jury. (Tr. 295). On January 17, 2003 the jury acquitted Brewer of criminal possession of a weapon in the second degree, but convicted him of third-degree weapons possession. (Tr.

13

326).

C. Post-trial Proceedings

On February 19, 2003, following his conviction but prior to his sentencing, Brewer filed a pro se motion to set aside the verdict pursuant to N.Y. Crim. Proc. Law § 330.30(1), which was supplemented by an affirmation of his newly-retained state appellate counsel on March 14, 2003. (Order dated Mar. 27, 2003;[4] Letter to the Court from Luke Martland, Esq., dated Dec. 20, 2006, Ex. A – Aff. of Edward Land, Esq. in Supp. of 440.10 Mot. ("Land 440.10 Aff."), executed Sept. 2, 2003, ¶ 3). Petitioner claimed that he had been arrested illegally and that therefore his subsequent statement to police was improperly introduced at trial, that certain hearsay statements had been improperly admitted at trial, and that Detective Stokes had been improperly permitted to offer expert testimony about the firearm. He also asserted that his trial attorney had provided ineffective assistance by failing to call certain witnesses and by not objecting to the introduction of hearsay evidence or the expert testimony of Detective Stokes. Finally, he contended that the State had neglected to introduce

---

[4] We note that the order incorrectly lists the date as March 27, 2000 instead of March 27, 2003.

available fingerprint evidence and offered the testimony of witnesses who were not credible. (<u>See</u> Aff. of Eric Brewer in Supp. of Mot. to Set Aside Verdict and for a New Trial CPL 330.30, dated Feb. 19, 2003; Supp. Aff. of Edward Land, Esq. in Supp. of CPL 330.30 Mot. ("Land 330.30 Aff."), dated Mar. 13, 2003).

Justice Hayes denied the motion. He determined that Brewer's objection to the introduction of his statement to police was in effect a request to reargue Justice Solomon's decision on the suppression motion, which could only be raised on direct appeal. (Mar. 27, 2003 Order at 2). He also held that petitioner's objection to the introduction of hearsay was unpreserved, and that in fact his trial counsel had purposely decided not to object to the introduction of certain hearsay evidence. (<u>Id.</u> at 2-3). Similarly, he found petitioner's objection to the introduction of Detective Stokes' expert testimony unpreserved. (<u>Id.</u> at 3). The court considered petitioner's claim of ineffective assistance of counsel to be based on facts outside of the record, and therefore not cognizable on a section 330.30(1) motion, but in any event meritless, based on counsel's "effective and zealous representation [which] resulted in defendant's acquittal of the top charge". (<u>Id.</u>). Finally, the court noted that it lacked authority to independently weigh the evidence submitted at trial, and thus could

not address petitioner's claims about the lack of fingerprint evidence and the credibility of the State's witnesses. (Id. at 3-4).

On April 3, 2003, Justice Hayes sentenced Brewer, as a second felony offender, to a determinate prison term of seven years. (Martland Decl., Ex. B at 1). The next day, Brewer filed a notice of appeal in the Appellate Division, First Department. (Dec. 20, 2006 Letter from Luke Martland, Esq. to the Court, Ex. C - Order dated Nov. 12, 2003, 1).

On September 2, 2003, while his appeal was pending, Brewer sought to set aside his conviction and sentence through a motion pursuant to N.Y. Crim. Proc. Law § 440.10. By his motion, Brewer contended that he had been denied his right to effective counsel based on his trial attorney's failure to move to reopen the pre-trial suppression hearing or to move for reargument of the decision denying the suppression motion before Justice Solomon. (Land 440.10 Aff. at ¶ 5). The trial court denied that motion on November 12, 2003, on the ground that Brewer's ineffective-assistance claim was one based on the record of the suppression hearing, and therefore had to be raised in his pending direct appeal under N.Y. Crim.

Proc. Law § 440.10(2)(b). (Nov. 12, 2003 Order at 2-3).[5]

Brewer's collateral challenges to his conviction having failed, he continued to pursue his direct appeal to the Appellate Division, First Department. A brief submitted by his appellate counsel raised three grounds for appeal. First, Brewer contended that his conviction was against the weight of the evidence. (Martland Decl., Ex. A at 33-38). Second, he argued that the gun recovered by the officers should have been suppressed, as the officers lacked a basis for approaching or pursuing him. (Id., Ex. A at 38-46). Third, he argued that his statement to the police should have been suppressed because it was the fruit of an unlawful arrest and because it was coerced by the police. (Id., Ex. A at 46-52). In a reply brief submitted by his appellate counsel, Brewer also raised a Sixth Amendment claim, asserting that his trial counsel had failed to consult with him prior to trial to learn the facts of the case, and had therefore failed to introduce evidence

---

[5] Additionally, on September 6, 2003 petitioner filed a pro se motion seeking to reduce the length of his sentence by five years, pursuant to N.Y. Crim. Proc. Law §§ 440.10, 440.20. He argued that the seven-year sentence that he was given exceeded the range of permissible sentences identified in the federal sentencing guidelines. (Mot. Requesting a Five Year Time Cut Only, dated Sept. 5, 2003, 1). There is no indication in the record that any action was taken on this motion, but as the length of petitioner's sentence has no bearing on the current petition, it is irrelevant to this proceeding.

at the suppression hearing that after his arrest the police had driven him past his girlfriend and her sister as they were being arrested, a fact that he asserted was relevant to his claim that his statement to the police was coerced. (Id., Ex. C at 34-35).

    The Appellate Division affirmed Brewer's conviction on April 11, 2006. People v. Brewer, 28 A.D.3d 265, 812 N.Y.S.2d 102 (1st Dep't 2006). The panel concluded that the verdict was not against the weight of the evidence and that there was no basis for overturning the jury's credibility determinations. Brewer, 28 A.D.3d at 266, 812 N.Y.S.2d at 104. It also concluded that the trial court had properly denied Brewer's motion to suppress, noting that in arguing his appeal he had improperly relied on trial testimony. Id. at 265, 812 N.Y.S.2d at 103. The panel also found that the police had been justified in seeking to question Brewer after observing him in an "angry altercation with a woman who was backed against a parked car" while he was "wearing a bloodstained shirt." Id. Once Brewer fled from the officers, the court held, the officers had reasonable suspicion to justify pursuit, and these suspicions were heightened once Brewer "jumped out of the moving car, running while holding something at his waistband." Id. Furthermore, the panel stated that the officers had had probable cause to arrest Brewer after observing him discarding a gun. Id. at

18

266, 812 N.Y.S.2d at 104. Finally, the panel determined that
Brewer's challenge to the voluntariness of his statement to the
police was unpreserved, and the court declined to review it in the
interest of justice. Id.. However, the panel went on to note that
"[w]ere we to review this claim, we would find it to be without
merit." Id.. The court also "reject[ed] defendant's ineffective
assistance argument with respect to this issue." Id..

     On April 28, 2006 Brewer sought reargument of his direct
appeal before the Appellate Division through a motion submitted by
his appellate counsel. (Decl. of Edward Land, Esq., in Supp. of
Pet. For Writ of Habeas Corpus ("Land Habeas Decl."), executed Feb.
21, 2007, Ex. A). He argued that the panel had misconstrued the
factual record and misapplied controlling legal principles in
affirming his conviction. (Id., Ex. A at 2-21). He also argued that
the manner in which the Appellate Division had resolved his appeal
violated his state and federal due-process rights, primarily
because the judges appeared to have decided the outcome of the
appeal prior to oral argument and thereby denied him a meaningful
right to be heard. (Id., Ex. A at 22-25). The motion for reargument
was denied on July 13, 2006. People v. Brewer, 2006 N.Y. App. Div.
9312, *1 (1st Dep't July 13, 2006).

While petitioner's reargument motion was pending before the First Department, he also sought leave to appeal to the New York Court of Appeals. In doing so, he argued that the Appellate Division was mistaken in determining that the police officers had been justified in pursuing him after he drove away from the officers, a fact on which the Appellate Division had relied in concluding that his motion to suppress had been properly denied. (Martland Decl., Ex. F at 4-8). He also argued that the Appellate Division had violated his state and federal due-process rights by determining the outcome of his appeal prior to hearing oral argument on it and by adopting facts that did not appear in the trial transcript. (Id., Ex. F at 8-9). The letter seeking leave to appeal does not indicate that he sought to appeal the Appellate Division's decision on any other grounds, although it does indicate that the briefs filed in the Appellate Division were annexed to the letter. (See id., Ex. F at 1). The Court of Appeals denied the application on June 20, 2006. People v. Brewer, 7 N.Y.3d 753, 819 N.Y.S.2d 878 (2006).

Having been rebuffed by the state courts, Brewer filed a habeas petition in this court that is dated September 28, 2006. In that petition he asserts the three grounds for appeal raised before the Appellate Division -- that the officers improperly pursued and

detained him in violation of his Fourth Amendment rights, which presumably relates to the denial of his suppression motion; that his written statement to police was coerced; and that his conviction was against the weight of the evidence. (Pet. at ¶ 13(i)-(ii), (iv)). He also argues that he was denied his federal due-process rights by the manner in which the Appellate Division decided his appeal, and that he was denied his Sixth Amendment right to the effective assistance of counsel based on certain mis-steps of his trial counsel, including counsel's failure to properly raise certain arguments during the suppression hearing, his failure to present a proper defense at trial, and his failure to investigate the case or engage in meaningful consultation. (Pet. at ¶ 13(iii), (v)).

Petitioner appears to have been incarcerated in Marcy Correctional Facility when he filed his petition. (See Pet. at p. 4). However, he was released from the custody of the New York State Department of Correctional Services on August 29, 2008 and placed on parole, with an August 29, 2013 maximum post-release supervision deadline. New York State Department of Correctional Services, Identifying and Location Information for Eric Brewer as of May 24, 2010, http://nysdocslookup.docs.state.ny.us (enter DIN 03R2074).

ANALYSIS

We first discuss the general criteria for assessing claims for habeas relief, then deal briefly with one procedural concern, and finally address petitioner's claims in turn.

A. Standard for Habeas Review

The stringency of federal habeas review turns on whether the state courts have passed on the merits of the petitioner's claim, that is, whether the decision of the highest state court to consider the claim is "based on the substance of the claim advanced, rather than on a procedural, or other, ground." Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001) (discussing 28 U.S.C. § 2254(d)). If the state court has addressed the merits, the petitioner may obtain relief only if the state court's ruling

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see, e.g., Bell v. Cone, 535 U.S. 685, 693-94

(2002); Williams v. Taylor, 529 U.S. 362, 412-13 (2000); Besser v.
Walsh, 601 F.3d 163, 178 (2d Cir. 2010); Howard v. Walker, 406 F.3d
114, 121-22 (2d Cir. 2005); Brown v. Artuz, 283 F.3d 492, 497-98
(2d Cir. 2002). If the state court has not addressed the merits of
a claim that is otherwise cognizable on habeas review, we evaluate
it de novo. See, e.g., Cone v. Bell, 129 S. Ct. 1769, 1784 (2009);
Dolphy v. Mantello, 552 F.3d 236, 238 (2d Cir. 2009); Norde v.
Keane, 294 F.3d 401, 409 (2d Cir. 2002) (citing Washington v.
Schriver, 255 F.3d 45, 55 (2d Cir. 2001)).

     Clearly established federal law "'refers to the holdings, as
opposed to the dicta, of the Supreme Court's decisions as of the
time of the relevant state-court decision.'" Howard, 406 F.3d at
122 (quoting Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir. 2002)).
"[A] decision is 'contrary to' clearly established federal law 'if
the state court arrives at a conclusion opposite to that reached by
[the Supreme] Court on a question of law or if the state court
decided a case differently than [the Supreme] Court has on a set of
materially indistinguishable facts.'" Id. (quoting Williams, 529
U.S. at 413).

     What constitutes an "unreasonable application" of settled law
is a somewhat murkier proposition. "'A federal court may not grant

habeas simply because, in its independent judgment, the "relevant state-court decision applied clearly established federal law erroneously or incorrectly."'" Id. (quoting Fuller v. Gorczyk, 273 F.3d 212, 219 (2d Cir. 2001) (quoting Williams, 529 U.S. at 411)). The Supreme Court observed in Williams that "unreasonable" did not mean "incorrect" or "erroneous," noting that the writ could issue under the "unreasonable application" provision only "if the state court identifies the correct governing legal principle from this Court's decisions [and] unreasonably applies that principle to the facts of the prisoner's case." 529 U.S. at 410-13. As implied by this language, "[s]ome increment of incorrectness beyond error is required . . . [H]owever, . . . the increment need not be great; otherwise habeas relief would be limited to state court decisions 'so far off the mark as to suggest judicial incompetence.'" Monroe v. Kuhlman, 433 F.3d 236, 246 (2d Cir. 2006) (quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000)). Accord Richard S. v. Carpinello, 589 F.3d 75, 80 (2d Cir. 2009).

        As for the state courts' factual findings, under the habeas statute "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Richard S., 589 F.3d

at 80-81; McKinney v. Artuz, 326 F.3d 87, 101 (2d Cir. 2003); see generally Rice v. Collins, 546 U.S. 333, 338-39 (2006).


B. Impact of Petitioner's Parolee Status


At the outset, although neither party has raised the issue, we must evaluate the impact that petitioner's current status as a parolee has on our ability to afford petitioner the relief that he seeks pursuant to 28 U.S.C. § 2254. That statute authorizes us to entertain a habeas petition on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Although petitioner is not currently incarcerated, we are nevertheless authorized to consider his petition.


First, we note that the relevant consideration in evaluating whether a petitioner is "in custody" within the meaning of 28 U.S.C. § 2254 is the petitioner's status on the date on which his petition was filed. Spencer v. Kemna, 523 U.S. 1, 7 (1998) (citing Carafas v. LaVallee, 391 U.S. 234, 238 (1968)); Maleng v. Cook, 490 U.S. 488, 490-91 (1989) (per curiam)). As we noted above, Brewer was incarcerated at Marcy Correctional Facility in the custody of

the New York State Department of Correctional Services when he filed his petition, which clearly fulfils the statutory "in custody" requirement.

Moreover, since Brewer is currently on parole his petition for habeas relief is not moot. Given that Brewer, as a parolee, is subject to restrictions imposed by the terms of his parole, he is suffering a "concrete injury, caused by the conviction and redressable by invalidation of the conviction", which satisfies Article III's case-or-controversy requirement. Spencer, 523 U.S. at 7. Accord Levine v. Apker, 455 F.3d 71, 76-77 (2d Cir. 2006) (holding that habeas petition of prisoner who had been released from prison by the Federal Bureau of Prisons to serve a three-year term of supervised release was not moot). See also Jones v. Cunningham, 371 U.S. 236, 241-43 (1963) (holding that parolee is "in custody" within meaning of habeas statute because terms of parole impose significant restraints on petitioner's liberty that are not shared by the public generally).

        C. Invalid-arrest claim

Having determined that we are authorized to entertain petitioner's habeas petition, we turn to the first ground on which

26

he seeks relief -- that the police officers "unlawfully pursued and detained" him absent probable cause in violation of the Fourth Amendment. (Pet. at ¶ 13 (i)). Petitioner's state appellate counsel raised this issue in the context of arguing that petitioner's suppression motion had been improperly denied. (Martland Decl., Ex. A at 45-46). Respondent contends that petitioner's Fourth Amendment claim does not provide a basis for habeas relief, given that petitioner was afforded the opportunity to litigate this claim in state court. (Resp't's Mem. at 18-19).

The Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim", that claim does not provide a basis for habeas relief. Stone v. Powell, 428 U.S. 465, 481-82 (1976). The Second Circuit has developed a "litmus test" to determine when a litigant has been denied the opportunity to fully and fairly litigate his Fourth Amendment claims, which provides that habeas relief can be afforded on a Fourth Amendment claim only "(a) if the state has provided no corrective procedures at all to redress the alleged [F]ourth [A]mendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." Capellan v. Riley, 975 F.2d 67, 70 (2d Cir.

27

1992) (citing <u>Gates v. Henderson</u>, 568 F.2d 830, 840 (2d Cir. 1977) (<u>en</u> <u>banc</u>)). This is an extremely narrow exception and may be invoked only if "the state . . . furnished no process, or if the process furnished was 'claimed to be meaningless [because] the totality of state procedures . . . did not provide rational conditions for inquiry into federal-law . . . questions.'" <u>Id.</u> (quoting Paul M. Bator, "Finality in Criminal Law and Federal Habeas Corpus for State Prisoners," 76 Harv. L. Rev. 441, 456-57 (1963)). <u>See also</u> <u>Poole v. New York</u>, 2009 WL 3009356, *6 (S.D.N.Y. Sept. 21, 2009) ("unconscionable breakdown" exception limited to "substantial failures in the process, such as the ambushing of the defendant by unanticipated and unforeseeable application of a state court procedural rule at a time when it can no longer be complied with, or still more extreme circumstances, including the bribery of a judge, use of torture, or use of perjured testimony") (citing cases, internal quotation marks and references omitted). Indeed, the stringency of the "unconscionable breakdown" exception is indicated by the Circuit Court's citation of an example in which a trial judge succumbed to "mob intimidation of the jury" during a murder trial. <u>Capellan</u>, 975 F.2d at 70 (discussing <u>Frank v. Mangum</u>, 237 U.S. 309, 335 (1915)).

In petitioner's case, there were "corrective procedures" in

place to address his Fourth Amendment claim in state court. Indeed, New York's process for holding suppression hearings has been deemed a "facially adequate" means for defendants to seek redress of alleged Fourth Amendment violations. Capellan, 975 F.2d at 70 n.1. And in fact Brewer made a pre-trial suppression motion, and a hearing was held on that motion at which Brewer was given the opportunity to call witnesses and testify on his own behalf, and during which his attorney offered a summation. (H. Tr. at 77). Brewer was also afforded the opportunity to assert his Fourth Amendment arguments on direct appeal in state court and he took full advantage of that opportunity. (See Martland Decl., Ex. A at 38-46, Ex. F at 4-8). Finally, we note that both the trial court and the Appellate Division explicitly addressed Brewer's Fourth Amendment arguments and offered a reasoned basis for rejecting them. (H. Tr. at 101-03; Brewer, 28 A.D.3d at 265-66, 812 N.Y.S.2d at 103-04).

Petitioner contends that he was not, in fact, offered a "corrective procedure" to redress his Fourth Amendment claim because the trial court refused to re-open the suppression hearing during his trial. (Pet'r's Reply Opp'n, 7-8, 10). This claim is unavailing since there was no "unconscionable breakdown" in the available procedures.

Brewer's request at trial to re-open the suppression hearing
was triggered by the introduction into evidence of the shirt that
he was wearing when he was arrested. During the suppression
hearing, Justice Solomon had cited the officer's testimony that
petitioner's shirt appeared to have blood on it as a basis for the
officers inquiring into petitioner's activities. (H. Tr. 101-03).
At the trial, the State introduced the shirt during the testimony
of Officer Balatoni. (Tr. 107-08). When petitioner's trial attorney
viewed the shirt, he suggested that the blood stains were too
faint, and located in an area of the shirt that would have been
difficult for the officers to view when they were driving by, as
they had testified at the suppression hearing. (Tr. 114-15). He
therefore asked the trial judge to re-open the suppression hearing.
(Tr. 115). Justice Hayes noted that he had not presided at the
suppression hearing, and instructed counsel that any application to
re-open the hearing would have to be made to the judge who had
decided the motion. (Id.). The attorney noted that if Justice
Solomon re-opened the suppression hearing and reversed his earlier
rulings, the shirt, gun and petitioner's statement to the police
might all be suppressed, and he sought to adjourn the trial to seek
a ruling from Justice Solomon. (Id.). Justice Hayes denied that
request, noting that the shirt had already been introduced into
evidence and shown to the jury, and accordingly if Justice Solomon

30

reversed his decision on petitioner's motion "it is going to require a mistrial." (Tr. 116). Therefore, the trial judge reasoned, there was no reason to delay the trial, but noted that petitioner's attorney could contact Justice Solomon during a recess in the trial, and that if Justice Solomon reversed his decision on the suppression motion, he would deal with the ramifications at that time. (Tr. 116-17).

There is no evidence in the record that defense counsel ever sought to re-open the suppression hearing before Justice Solomon.[6] In any event, the fact that the trial judge required counsel to follow proper procedure to re-open the hearing plainly cannot establish that petitioner was denied the opportunity to litigate his Fourth Amendment claim. See People v. Bradley, 247 A.D.2d 929, 930, 668 N.Y.S.2d 788, 789 (4th Dep't 1998) (noting that the law of the case doctrine prevents a judge from reconsidering a ruling of a judge of coordinate jurisdiction in the course of the same litigation). Moreover, the trial judge's refusal to stay the trial until petitioner had pursued re-opening the hearing did not prevent petitioner from seeking such relief or prejudice him in any way. As

---

[6] We note that petitioner lists this failing as an aspect of his ineffective-assistance claim, which we discuss below, at pp. 68-71, infra. (See Pet'r's Reply Opp'n at 8).

Justice Hayes noted, the shirt that defense counsel sought to have suppressed had already been introduced at trial, and therefore a subsequent suppression order would almost certainly have required the judge to declare a mistrial and recommence the trial before a new jury.[7]

     In short, the record reflects that there were corrective procedures in place to address petitioner's Fourth Amendment claim. Moreover, there is no evidence to suggest that any "unconscionable breakdown" in the process prevented petitioner from availing himself of such procedures. <u>See</u>, <u>e.g.</u>, <u>Gomez v. LeFevre</u>, 1989 WL 63030, *4-7 (S.D.N.Y. June 2, 1989).[8] Therefore, petitioner's

---

     [7] Petitioner argues that his attorney should have been permitted to request a mistrial immediately in light of the trial judge's belief "that the damage was done." (Pet'r's Reply Opp'n at ¶ 26). Putting aside the fact that petitioner does not assert, much less establish, that his attorney was prevented from seeking a mistrial, we note that the trial judge merely indicated that were Justice Solomon to rule that previously-admitted evidence was in fact inadmissible, he would likely be required to declare a mistrial.

     [8] In petitioner's reply submission, he suggests that the shirt that he was wearing when he was arrested "was not produced until the Trial." (Pet'r's Reply Opp'n at ¶ 14). However, petitioner has not raised any claim relating to the state's failure to disclose potentially exculpatory evidence under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and its progeny, nor has he raised any similar due-process claim. Although the shirt was not introduced into evidence at the suppression hearing (H. Tr. 83), petitioner has not established that defense counsel was prohibited from viewing the shirt prior to trial. His attorney stated that he was not sure whether the shirt was available at

Fourth Amendment claim cannot provide the basis for habeas relief.

        D. Coercion claim


        Brewer's next claim is that the written statement that he provided to police officers following his arrest was the product of police coercion and that its admission at trial violated his rights under the Fifth Amendment. (Pet. at ¶ 13(ii)). Respondent contends that petitioner has failed to exhaust this claim, that it is procedurally barred and that it is ultimately meritless. We agree that this claim does not provide a basis for affording petitioner habeas relief.


        We first address the exhaustion question. Assuming that effective state processes exist to remedy petitioner's claimed rights-violation, we are authorized to grant habeas relief only if the petitioner has "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b). This requires petitioner to "present his federal constitutional claims to the highest court of the state" that is capable of reviewing them, which means that that

---

the suppression hearing, but did not state whether he had requested to view the shirt prior to trial and, if so, what response, if any, he received from the prosecutor. (Tr. 114).

court is "fairly appraised" of petitioner's federal constitutional claims and the factual and legal premises underlying them. Cotto v. Herbert, 331 F.3d 217, 237 (2d Cir. 2003); Grey v. Hoke, 933 F.2d 117, 119-20 (2d Cir. 1991) (citing Pesina v. Johnson, 913 F.2d 53, 54 (2d Cir. 1990) (per curiam); Morgan v. Jackson, 869 F.2d 682, 684 (2d Cir. 1989); Daye v. Attorney Gen., 696 F.2d 186, 191 (2d Cir. 1982)(en banc)).

Here, although petitioner argued to the Appellate Division that his statement to the police had been coerced in violation of the Fifth Amendment, he did not mention this ground in his application for leave to appeal to the Court of Appeals. (See Martland Decl., Ex. A at 46-52, Ex. C at 33-35, Ex. F). Instead, he requested review on two other grounds, arguing that the police had lacked a basis to stop and question him and that the Appellate Division had not evaluated the evidence properly and in good faith. (Id., Ex. F at 1-2). Although petitioner's letter application indicates it enclosed the Appellate Division briefs -- as required by the Court of Appeals rules -- the inclusion of a brief that discusses a claim that the letter application does not mention while discussing other claims will not satisfy the exhaustion requirement. Grey, 933 F.2d at 120 (noting that the New York Court of Appeals does not have a "duty to look for a needle in a paper

34

haystack" (internal quotation marks omitted)). <u>Accord</u> <u>Brown v.</u>
<u>Perlman</u>, 2008 WL 2009220, *21-22 & nn. 36-37 (S.D.N.Y. May 8, 2008)
(citing cases). <u>Compare</u> <u>Galdamez v. Keane</u>, 394 F.3d 68, 75-77 (2d
Cir. 2005) (claims in appellate brief attached to letter
application were fairly presented to Court of Appeals when
petitioner did not specifically address any claims in the text of
the letter application).

     Moreover, Brewer's letter application did not even generally
reference the arguments presented in his appellate briefs as
grounds for review by the Court of Appeals, stating instead that
there were "two reasons" that the Appellate Division's ruling was
subject to reversal, neither of which included petitioner's Fifth
Amendment claim. (Martland Decl., Ex. F at 1). Given that the
Second Circuit has held that a passing reference to attached
appellate briefs is not enough to fairly present claims to the
Court of Appeals, certainly a complete lack of reference to such
briefs as presenting grounds for appeal cannot satisfy the
exhaustion requirement. <u>Jordan v. Lefevre</u>, 206 F.3d 196, 198-99 (2d
Cir. 2000) (claim not presented to Court of Appeals even though
petitioner sought to appeal "[f]or . . . the reasons set forth in
his Appellate Division briefs" when claim was not among those
argued in preceding text of letter application).

Brewer's failure to invoke his Fifth Amendment claim to the Court of Appeals reflects a lack of exhaustion of the claim. Nonetheless, we must deem his claim exhausted but procedurally barred, because at this point petitioner would be precluded from raising it in state court. See Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994); Grey, 933 F.2d at 120 (citing, inter alia, Harris v. Reed, 489 U.S. 255, 263 n. 9 (1989)); Cf. Pesina v. Johnson, 913 F.2d 53, 54 (2d Cir. 1990) (per curiam) (refusing to consider unexhausted claim even though state court would likely consider it procedurally barred). Petitioner has already filed a request for leave to appeal to the New York Court of Appeals, and the time has long passed for him to seek reconsideration of the denial of his request. See N.Y. Ct. Rules § 500.20(d). He is also not permitted to file a successive request for leave to appeal to the Court of Appeals. See N.Y. Crim. Proc. Law § 460.10(5). Moreover, he would be precluded from raising his Fifth Amendment claim in a motion to vacate his conviction under N.Y. Crim. Proc. Law § 440.10, because it is based on facts in the record of the suppression hearing and trial. See N.Y. Crim. Proc. Law § 440.10 (2)(c). Therefore, we must apply procedural-default analysis.

We cannot grant habeas relief based on a claim that is procedurally defaulted unless petitioner either demonstrates cause

for his default and prejudice or establishes that a "'fundamental miscarriage of justice'" would result from a failure to consider the claim. Schlup v. Delo, 513 U.S. 298, 314-15 (quoting McCleskey v. Zant, 499 U.S. 467, 494 (1991)); Grey, 933 F.2d at 121 (citing Murray v. Carrier, 477 U.S. 478, 492 (1986); Wainwright v. Sykes, 433 U.S. 72, 87-91 (1977)).[9] "'[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" Strickler v. Greene, 527 U.S. 263, 283 n.24 (1999) (quoting Murray, 477 U.S. at 488). As for the "fundamental miscarriage of justice" test, that "rare" exception to procedural bar is reserved for "the extraordinary case" in which the petitioner can demonstrate that he was actually innocent and that the claimed error led to his

---

[9] We agree with respondent that procedural-default analysis would also be triggered by the Appellate Division's rejection of petitioner's Fifth Amendment claim as unpreserved. Brewer, 28 A.D.3d at 266, 812 N.Y.S.2d at 104. This decision, based on New York's contemporaneous-objection rule, represents an independent and adequate state-law ground for denying the claim. See, e.g., Breland v. Artus, 2006 WL 845474, *7 (E.D.N.Y. Mar. 29, 2006) (citing Garcia v. Lewis, 188 F.3d 71, 79 (2d Cir. 1999)); Reese v. Greiner, 2003 WL 21459577, *5 (S.D.N.Y. June 23, 2003). See also Wainwright, 433 U.S. at 86-87. As such, we could only review Brewer's Fifth Amendment claim if he satisfied either of the exceptions set forth in the procedural-default analysis above. See, e.g., Coleman v. Thompson, 501 U.S. 722, 750 (1991); see also Jimenez v. Walker, 458 F.3d 130, 136 n.3 (2d Cir. 2006) (citing, inter alia, Harris, 489 U.S. at 260).

conviction. Schlup, 513 U.S. at 321 (citing Murray, 477 U.S. at 496); see also Doe v. Menefee, 391 F.3d 147, 160-61 (2d Cir. 2004). Moreover, the petitioner is expected to establish actual innocence based on new evidence rather than on what was presented at trial. See, e.g., Schlup, 513 U.S. at 327, 329.


Petitioner fails to satisfy either test. He does not attempt to explain why he did not seek leave to appeal his Fifth Amendment claim, and there is no reason to believe that defense counsel was prevented from doing so.[10] In short, Brewer does not demonstrate cause.[11]

_____

[10] Although a petitioner may satisfy the cause requirement by demonstrating that his attorney's default denied him constitutionally adequate representation, Restrepo v. Kelly, 178 F.3d 634, 640 (2d Cir. 1999), he cannot invoke this ground for cause unless he has first asserted an equivalent Sixth Amendment claim in state court and exhausted his state-court remedies with respect to it. See, e.g., Edwards v. Carpenter, 529 U.S. 446, 451-53 (2000). Although Brewer asserted a claim for ineffective assistance of his trial counsel in state court, he did not pursue a Sixth Amendment claim based on the ineffective assistance of his state appellate counsel, and therefore cannot rely on such a claim to demonstrate cause for his default.

[11] In petitioner's reply submission he argues that any issues that were not included in the letter application seeking leave to appeal to the Court of Appeals "were preserved in the CPL § 440.10 Application." (Pet'r's Reply Opp'n at ¶ 18). We note that petitioner's contention that his statement to the police was the subject of coercion was not, in fact, raised in either of his motions made pursuant to N.Y. Crim. Proc. Law § 440.10. Petitioner did raise a coercion claim in his motion to set aside the verdict in his trial pursuant to N.Y. Crim. Proc. Law § 330.30. (See Order dated Mar. 27, 2003, at 2). However, adverse

He also cannot satisfy the demanding standard to demonstrate that a failure to address his claim that his statement to the police was coerced would constitute a fundamental miscarriage of justice. He cannot show that he is in fact innocent; indeed, the evidence at trial was strongly indicative of guilt, and he proffers no new evidence.

In sum, Brewer's claim that his statement to the police was obtained in violation of the Fifth Amendment is procedurally barred from habeas review. We therefore do not reach either side's arguments on the merits of the claim.

      E. Due-process claim

Brewer next alleges that his due-process rights were violated by the Appellate Division when it considered his direct appeal.

---

rulings on a section 330.30 motion are subsumed in the final judgment and hence are includible on the defendant's direct appeal. See, e.g., People v. Pollock, 67 A.D.2d 608, 608, 412 N.Y.S.2d 12, 12-13 (1st Dep't 1979), aff'd on other grounds, 50 N.Y.2d 547, 429 N.Y.S.2d 628 (1980). Accord Frost v. Walker, 2002 WL 386357, *4 (E.D.N.Y. Mar. 12, 2002); Hill v. Snow, 590 F. Supp. 1157, 1160 n.4 (S.D.N.Y. 1984); People v. Rosenblatt, 277 A.D.2d 61, 62, 717 N.Y.S.2d 9, 10 (1st Dep't 2000). Hence, Brewer's failure to pursue the claim on his leave application still represents a failure to exhaust. See Grey, 933 F.2d at 119-20 (noting that highest available state court must address claim to satisfy federal habeas exhaustion requirement).

39

(Pet. at ¶ 13(iii)).[12] To support this claim, Brewer proffers in this habeas proceeding a declaration from his state appellate counsel. In a rambling, and occasionally bizarre, stream-of-consciousness narrative, the attorney complains that the First Department judges who heard petitioner's appeal engaged in various forms of misbehavior. These include judges remaining silent during the oral argument with body language indicating that they lacked interest in the case (Land Habeas Decl. at ¶ 16), a judge's asserted mis-characterization of the trial testimony and use of an offensive hypothetical argument that the judge did not believe to be true (id. at ¶¶ 38, 40), a judge supposedly voting to affirm the conviction in retaliation for Brewer's opposition to an adjournment request made by the State (id. at ¶¶ 42-43), a judge offering an implausible rationale for a police officer's comment (id. at ¶ 45), and the claimed fact that the Appellate Division decision mentioned

---

[12] We note that petitioner initially raised this claim in his motion for reargument filed in the First Department by his state appellate counsel. (Land Habeas Decl. at ¶ 8 & Ex. A). The claim was also listed as one of two grounds for seeking leave to appeal in petitioner's letter application to the Court of Appeals . (Martland Decl., Ex. F at 8-9). As respondent notes, petitioner exhausted his claim despite raising it for the first time in the reargument request because the alleged rights-violation occurred during the First Department's evaluation of petitioner's direct appeal. (See Resp't's Mem. at 12).

facts that were not in the record. (<u>Id.</u> at ¶¶ 49-52).[13] This declaration also appears to echo a claim that counsel had advanced in his leave application and in his motion for reconsideration before the Appellate Division, in both of which he had asserted that the Appellate Division judges had decided the outcome of Brewer's appeal before it was heard, and described the judges' purported misconduct as a violation of Brewer's Fourteenth Amendment due-process right "to be heard in a meaningful manner." (Martland Decl., Ex. F at 8-9; Land Habeas Decl., Ex. A at ¶¶ 59-60).

Respondent contends that this claim is groundless and premised on "wild speculation." (Resp't's Mem. at 25-26). We agree that it does not offer a basis for habeas relief.

_____

[13] We note that Mr. Land's declaration was also peppered with <u>ad hominem</u> attacks on the members of the panel that heard the oral argument on petitioner's appeal and irrelevant details about Mr. Land's personal life and family. (<u>See</u>, <u>e.g.</u>, Land Habeas Decl. at ¶¶ 17, 20 (referring to presiding justice as "results-oriented" and incapable of "being fully objective"), ¶ 17 n.1 (describing misbehavior of great-uncle during declarant's bar mitzvah), ¶ 23 n.2 (describing rationale for declarant giving up his drivers' license), ¶ ¶ 28-29 (detailing declarant's own drug-related arrest), ¶ 44 (describing judges on panel as "grasping at straws in a results-oriented endeavor to sustain the conviction")). Needless to say, none of this was pertinent to the issues at hand, nor did it assist us in resolving petitioner's claims.

First, we note that we are to evaluate Brewer's due-process claim de novo, as it was not adjudicated "on the merits" in state court. Petitioner first raised his claim in his request for reargument to the Appellate Division. However, that court's denial of the reargument motion is not considered a decision on the merits of a claim first raised in that motion, because in evaluating such a reargument request the appellate court is limited to considering whether it should revisit its prior decision, and any reargument is limited to the grounds that were initially raised on appeal. Norde, 294 F.3d at 410-11 (citing N.Y. Crim. Proc. Law § 470.50). See also N.Y. Comp. Codes R. & Regs. tit. 22, § 600.14 (noting that motion for reargument before the First Department should include a concise statement of the points "claimed to have been overlooked or misapprehended by the court," along with citations to the record and the authorities relied on). Moreover, if the Appellate Division has not addressed the merits of a claim, a subsequent denial of leave to appeal by the Court of Appeals does not constitute an adjudication of that claim on the merits. See Norde, 294 F.3d at 408, 411. In the absence of state-court adjudication of the merits of petitioner's claim, we review it de novo. Cone, 129 S. Ct. at 1784; Dolphy, 552 F.3d at 238.

We begin by evaluating the aspects of petitioner's claim that

42

target purported misconduct by the First Department judges during the oral argument on his appeal. Petitioner claims that some of the judges indicated that they were not interested in his appeal by their body language and silence, that a judge improperly characterized the trial testimony and employed an offensive hypothetical argument that he did not believe to be true, and that another judge offered an implausible rationale for a police officer's comment in the record. Petitioner does not cite any precedent for the proposition that a judge's body language or questioning during oral argument can constitute a violation of a party's federal due-process rights, nor are we aware of any. In fact, parties have no right to have an oral argument held on their appeal. See Herring v. New York, 422 U.S. 853, 863 n.13 (1975). Therefore, there is no basis for concluding that the type of purported misbehavior about which petitioner complains during the oral argument violated his due-process rights.

Next, petitioner makes the bizarre argument that one of the judges, the Hon. Joseph P. Sullivan, may have voted to affirm his conviction as retaliation for his appellate counsel's earlier opposition to an adjournment request by the State. The declaration submitted by that attorney recounts that in October 2005, after both parties had consented to "numerous" adjournments in the case,

43

the State requested an additional three-month adjournment. (Land Habeas Decl. at ¶ 42). Counsel objected to that request, and Justice Sullivan heard oral argument on the State's adjournment motion. During that argument, Justice Sullivan commented that Brewer's attorney was giving the State "a hard time", and he refused to limit the adjournment to a shorter period, although in granting the adjournment he did deem it to be "final" and "said some nice things" to counsel. (Id. at ¶¶ 42-43).

The attorney admits that it is "sheer speculation" on his part to suggest that Justice Sullivan voted to affirm Brewer's conviction in retaliation for his having opposed the State's adjournment request. (Id. at ¶ 43). We agree, and further note that there is no legal authority for the proposition that a habeas court may, as a general matter, psychoanalyze a state-court judge to determine the "real" reasons -- unexpressed in the court's opinion -- for his having decided a case the way he did. Admittedly, in some very narrowly defined contexts a judge's retaliatory motive can raise due-process concerns. See Texas v. McCullough, 475 U.S. 134, 137-38 (1986) (discussing due-process concern raised by trial judge's vindictiveness at defendant having successfully attacked first conviction resulting in more severe sentence following new trial) (quoting North Carolina v. Pearce, 395 U.S. 711, 725-26

44

(1969)). Cf. Caperton v. A.T. Massey Coal Co., Inc., 129 S. Ct. 2252, 2260-65 (2009) (holding that due process required judge's recusal based on his receipt of massive financial support for his campaign from litigant's CEO and President). However, petitioner fails to offer any plausible rationale for inferring that Justice Sullivan retaliated against him for opposing the State's adjournment request -- a move that neither challenged an earlier decision of Justice Sullivan nor imposed any burden on him -- much less any evidence of retaliation that could support a due-process claim.

Brewer also criticizes Justice Sullivan for posing a hypothetical question during oral argument based on speculation that Brewer's contact with Ms. McAllister on the side of the car might have led the police to believe that he was trying to kidnap her. (Land Habeas Decl. at ¶ 38). Complaining that there is no basis in the record for that scenario, counsel asserts that he and his client were upset by the question, and he speculates that it may show that the judge was "looking for any angle to sustain the conviction". (Id. at ¶¶ 43-44).

This argument is self-evidently absurd. Judges are free to pose any questions they wish at oral argument, and their comments

or questions reveal neither how they will rule nor why. In any event, they offer no basis whatsoever for challenging the decisions that the judges ultimately make. Moreover, in this instance the judge's speculation during oral argument that the officers may have believed that Brewer was kidnaping his girlfriend when they saw the couple arguing appears to have been an entirely understandable attempt to challenge Mr. Land's contention that the officers had no reason to pursue Brewer once he drove away, even if the judge's suggestion was not directly based in the trial record. (See id. at ¶ 43).

Petitioner's next contention is that the Appellate Division's decision contained "facts having no support in the Trial record." (Id. at ¶ 49). The declaration supplied by Brewer's appellate counsel identifies four such purportedly erroneous findings. First, he takes issue with the court's use of the term "altercation" to describe the interaction that the police officers observed between Brewer and his girlfriend, because "[t]he word 'altercation' connotes some sort of violent conduct, such as fighting or a physical struggle, not an argument." (Id.). Second, he disagrees with the Appellate Division's observation that Brewer's conduct and blood-stained shirt "suggested that some kind of violence might have already occurred," Brewer, 28 A.D.3d at 265, 812 N.Y.S.2d at

46

103, because, according to counsel, the blood stains actually "suggested that Mr. Brewer was a victim of violence". (Land Habeas Decl. at ¶ 50). Next, he targets the Appellate Division's statement that Brewer's "flight from the uniformed police officers elevated the initial founded suspicion of criminality to the level of reasonable suspicion, justifying pursuit," Brewer, 28 A.D.3d at 265, 812 N.Y.S.2d at 103, because that statement, as he interprets it, implies that "flight in any [and] all circumstances equals reasonable suspicion". (Land Habeas Decl. at ¶ 51). Finally, he denies that there is record evidence that Brewer "jumped out of [a] moving car," as stated in the Court's decision. Brewer, 28 A.D.3d at 265, 812 N.Y.S.2d at 103. (Land Habeas Decl. at ¶ 52).

Initially, we note that this series of arguments amounts to an effort to assert a Fourth Amendment claim premised on purported facts that Brewer contends the state court should have found. This mode of argument is foreclosed, however, since -- as we have noted -- the Supreme Court's decision in Stone v. Powell and its progeny precludes our consideration of such a claim. See pp. 27-28, supra.

In any event, in reviewing a claim for habeas relief we are to presume that a state court's factual findings are correct, and may overturn them only if the petitioner carries the burden of refuting

them by clear and convincing evidence. See, e.g., McKinney, 326 F.3d at 101. Petitioner has not come close to meeting this lofty standard, as he offers no evidentiary support for his contentions. For example, he asserts that the term "altercation" implies a physical struggle, but cites no evidence for this proposition. In fact, according to Merriam-Webster's Dictionary, the word "altercation" means "wordy strife". Merriam-Webster's Third New International Dictionary Unabridged, available at http://mwu.eb.com/mwu (search for "altercation"). Likewise, although petitioner claims that there was no record evidence that he jumped out of a moving car, in fact Officer Balatoni testified that the car in which petitioner fled from the officers "didn't come to a complete halt" and that Brewer "had the back door open and just bolted out of the back door and started running" (Tr. 98-99), testimony that is consistent with the Appellate Division's characterization. In short, there is no basis for us to disturb the Appellate Division's factual findings, and the court's reliance on those findings in no way infringed on petitioner's due-process rights.

Finally, Brewer contends that the Appellate Division judges improperly determined the outcome of his appeal prior to conducting oral argument. He asserts that this was a violation of his federal

48

due-process right to "be heard in a meaningful manner" and to "appear before a neutral and detached jurist". (Martland Decl., Ex. F at 8). However, we reiterate that Brewer had no right to an oral argument on his appeal, Herring, 422 U.S. at 863 n.13, and therefore plainly had no right to have a decision on his appeal reserved until the conclusion of an oral argument. Moreover, the Supreme Court has recognized that even when an oral argument is delivered, it is "likely to leave [a] judge just where it found him." Id. at 863 (internal quotation marks omitted). This suggests that Brewer's due-process rights would not have been violated even if the Appellate Division judges had developed a belief that he was guilty -- presumably on the basis of the parties' briefs -- and maintained that belief throughout the oral argument, a scenario that Brewer cannot prove took place.

Finally, if Brewer's argument is intended to suggest that he was denied his right to "a neutral and detached jurist," he offers not a shred of evidence to support such an assertion. The fact that a judge may have been sufficiently influenced by arguments in a brief filed before oral argument that he has already decided how he will vote before the argument is held is neither unusual nor a denial of due process. Furthermore, petitioner suggests no basis to infer that any of the judges were influenced by improper

49

factors, such as personal pecuniary interest. <u>See</u> <u>generally</u> <u>Caperton</u>, 129 S. Ct. at 2259-61.

In sum, Brewer's challenges to the Appellate Division's denial of his appeal are almost entirely speculative, and do not establish a violation of his due-process rights. As such, they do not constitute a basis for granting him habeas relief.

<u>      F. Weight-of-the-evidence claim</u>

Petitioner's next claim is that his conviction was against the weight of the evidence. (Pet. at ¶ 13(iv)). Respondent contends that this claim is unexhausted, and in any event is not cognizable on habeas review, since it asserts a violation of state law. Moreover, respondent argues that if the claim is interpreted as one challenging the sufficiency of the evidence introduced at trial under federal law, it is meritless. (Resp't's Mem. at 26-28). We conclude that the claim, properly understood as asserting a failure to prove guilt beyond a reasonable doubt, may be addressed on its merits, but that it is ultimately unavailing.

At the outset, we note that we are not foreclosed from reviewing Brewer's weight-of-the-evidence claim in his <u>pro se</u>

petition merely because it is couched in terms of a state-law violation. Respondent is, of course, correct that a claim that the weight of the evidence introduced at trial did not support a petitioner's conviction only raises a question of state law, and does not provide a basis on which we can grant habeas relief. Baide-Ferrero v. Ercole, 2010 WL 1257615, *5 (S.D.N.Y. Mar. 31, 2010) (citing cases). However, we are instructed to interpret the submissions of pro se litigants liberally, and therefore we construe petitioner's claim to also target the sufficiency of the evidence supporting his conviction, which implicates petitioner's federal due-process rights. See Taylor v. Poole, 538 F. Supp. 2d 612, 618-19 (S.D.N.Y. 2008); Catlin v. Khahaifa, 2010 WL 681063, *3 (W.D.N.Y. Feb. 22, 2010) (citing Urruita v. Greene, 2007 WL 2484305, *4 (W.D.N.Y. Aug. 28, 2007)); Klosin v. Conway, 501 F. Supp. 2d 429, 438-40 (W.D.N.Y. 2007).

We next address the question of whether petitioner has properly exhausted this claim. Respondent contends that petitioner has not exhausted his claim because, although he argued to the Appellate Division that his conviction was against the weight of the evidence, he did not present this claim to the Court of Appeals in seeking leave to appeal to that court. (Resp't's Mem. at 12). We agree that the claim was not exhausted, although that conclusion

requires a more extended discussion than respondent gives it. In Brewer's appellate brief to the First Department he labeled the claim as one targeting the weight of the evidence, a claim distinct from the constitutionally-based evidentiary-sufficiency claim. See, e.g., People v. Danielson, 9 N.Y.3d 342, 348-49, 849 N.Y.S.2d 480, 484 (2007). That briefing, however, and the responding brief of the State adequately presented an evidentiary-sufficiency claim to the Appellate Division since Brewer articulated the claim in terms of the sufficiency standard. (Martland Decl., Ex. A at 33 (saying test is whether "no reasonable view of the evidence . . . is sufficient to establish guilt beyond a reasonable doubt")). Moreover, the State responded that the proof was "legally sufficient" and invoked the same constitutional standards, along with separately arguing the weight-of-the-evidence claim. (Id., Ex. B at 20-21). See Daye, 696 F.2d at 193 n.5, 194 (describing methods for petitioner to present federal constitutional claims absent explicit reference to Constitution, including asserting claim in particular terms that "call to mind a specific right protected by the Constitution" and noting that state's opposing papers can alert state court to federal nature of petitioner's claims). Accord, e.g., DiSimone v. Phillips, 461 F.3d 181, 190 (2d Cir. 2006); Jackson v. Edwards, 404 F.3d 612, 618 (2d Cir. 2005); Blissett v. Lefevre, 924 F.2d 434, 438 (2d Cir. 1991).

The difficulty with Brewer's procedural posture on this claim is that, while asserting other grounds for review in his leave application, he did not ask for review of his evidentiary-insufficiency claim. Moreover, as discussed above, his inclusion with his leave application of an Appellate Division brief that discusses the claim is insufficient to present the claim to the Court of Appeals. We infer that Brewer did not assert this claim in his leave application because the Court of Appeals lacks authority to review the Appellate Division's weight-of-the-evidence determinations in non-capital cases. Danielson, 9 N.Y.3d at 349, 849 N.Y.S.2d at 484. This limitation does not save Brewer's constitutional claim, however, since the Court of Appeals does have the authority to review evidentiary-sufficiency claims. See, e.g., People v. Bailey, 13 N.Y.3d 67, 70-72, 886 N.Y.S.2d 666, 668-70 (2009).

That said, we choose to address the merits of the claim rather than explore the extended procedural-bar analysis that we would otherwise be required to pursue, since we conclude that the sufficiency claim is plainly meritless. See 28 U.S.C. § 2254(b)(2). To determine whether sufficient evidence was presented at trial to sustain a conviction as a matter of due process, a reviewing court must ask "'whether, after viewing the evidence in the light most

favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Wright v. West, 505 U.S. 277, 284 (1992) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)) (emphasis in original). In making this determination, the court must assume that the trier of fact resolved any conflicting inferences that could be drawn from the facts in the record in favor of the prosecution. Jackson, 443 U.S. at 326.

In petitioner's case, sufficient evidence was introduced at trial for a rational fact-finder to convict him of third-degree criminal possession of a weapon. The elements of that crime are that a person possesses a loaded firearm outside of his home or place of business. N.Y. Penal Law § 265.02(4) (repealed 2006). Furthermore, the firearm and the ammunition must have been operable. See, e.g., In re Francisco C., 238 A.D.2d 224, 225, 657 N.Y.S.2d 16, 17 (1st Dep't 1997). (See also Tr. 298). At trial, Officer Balatoni testified that he saw Brewer pull a weapon from the waistband of his pants and throw it to the ground while he was standing behind a housing development. (See Tr. 102). The officer also testified that he recovered the weapon immediately after petitioner had been handcuffed, and that the weapon was loaded. (Tr. 104-05). Detective Stokes then testified that, based on his

54

having fired the gun using the ammunition that was recovered with the gun, the firearm and the ammunition were operable. (Tr. 141-43). Petitioner also provided a statement to the police officers following his arrest in which he admitted to throwing a gun on the floor behind a building. (Tr. 32-33). In short, a rational fact-finder, crediting the testimony of these witnesses and petitioner's own statement, easily could have concluded that Brewer was guilty of third-degree weapons possession beyond a reasonable doubt.

In support of his claim, Brewer contends that the evidence was insufficient because fingerprint and DNA evidence supposedly introduced during the trial did not match his fingerprints and DNA. (Pet. at ¶ 13(iv)). However, respondent correctly notes that "[n]o fingerprint or DNA evidence was introduced by the prosecution or defense at trial." (Resp't's Mem. at 28). Moreover, we are aware of no authority requiring the prosecution to introduce fingerprint or DNA evidence to establish the elements of the crime of which petitioner was convicted, and petitioner cites none.[14] Therefore,

---

[14] Petitioner particularly targets the fact that no DNA evidence was produced to confirm that the stain on the shirt that he was wearing at the time of his arrest was blood. (Pet'r's Reply Opp'n at ¶ 4). However, we note that the actual nature of the substance on the shirt is of no relevance, as the officers' perception of the substance as blood is what is relevant to their motivation for approaching petitioner and his girlfriend. Moreover, we note that in petitioner's trial testimony he stated

petitioner's claim targeting the evidence on which the jury relied to convict him does not provide a basis for granting him habeas relief.

      G. Ineffective-assistance-of-counsel claim

As a final basis for seeking habeas relief, Brewer contends that errors by his trial counsel resulted in the denial of his constitutional right to representation. (Pet. at ¶ 13(v)). Specifically, petitioner argues that during the suppression hearing his counsel failed "to properly argue" that he "was unlawfully pursued and detained" (id. at ¶ 13(v)(A)), failed "to properly raise the argument" that his statement to the police was "unlawfully coerced" (id. at ¶ 13(v)(B)), failed to "raise any coherent defense at trial" (id. at ¶ 13(v)(C)), and neglected to investigate the case or to consult with him prior to trial. (Id. at ¶ 13(v)(D)). Respondent argues that petitioner's ineffective-assistance claims are unexhausted and procedurally barred, and in

---

that he dripped blood on his shirt after being assaulted by a police officer in the back of a police car following his arrest. (See Tr. 177-78). This testimony, if credited, offered jurors an explanation for the presence of blood on petitioner's shirt that supported his defense, and therefore it would have been incongruous for Brewer to question the nature of the stain at trial.

any event meritless. He notes that petitioner raised the second and fourth aspects of his claim in his direct appeal to the Appellate Division, but that these claims were not among those cited in his letter application seeking leave to appeal to the Court of Appeals, and therefore were not exhausted. (Resp't's Mem. at 29-30). Moreover, the first and third aspects of petitioner's current ineffective-assistance claim were never presented to the Appellate Division. (Id. at 30). Respondent also contends that petitioner's ineffective-assistance claim in all its versions is substantively meritless. (Resp't's Mem. at 31-35). We agree.

On Brewer's direct appeal to the Appellate Division, he asserted in his reply brief two elements of his current Sixth Amendment claim -- that his trial counsel had "failed to consult with him to adequately learn the facts of the case" and that, during the suppression hearing, he had "refused to make the argument on [petitioner's] behalf that the alleged confession was coerced". (Martland Decl., Ex. C at 33-35). The Appellate Division addressed and rejected Brewer's complaint about his attorney's performance regarding the supposedly coerced statement, but did not address his criticism of counsel's asserted failure to consult him.

Brewer, 28 A.D.3d at 266, 812 N.Y.S.2d at 104.[15] Following the First Department's affirmance of petitioner's conviction, he did not mention these allegations about the ineffectiveness of his trial counsel in his leave application to the Court of Appeals. (See Martland Decl., Ex. F). Since attaching the Appellate Division briefs to a letter-application in which these claims were not among the enumerated grounds for appeal does not suffice to present the claims to the Court of Appeals, see Grey, 933 F.2d at 119-20; Brown, 2008 WL 2009220, at * 21-22 & nn. 36-37, these aspects of petitioner's ineffective-assistance claims were not exhausted by Brewer's direct appeal. Grey, 933 F.2d at 119-20; Cotto, 331 F.3d at 237.

Petitioner also failed to exhaust any of his current ineffective-assistance claims by way of his various collateral challenges to his conviction. In his section 440.10 motion, he asserted that his trial counsel's failure to move to reargue the

---

[15] Since the lack-of-consultation claim was plainly not based on the trial record, it appears that it was not properly raised on petitioner's direct appeal in any event, and should instead have been asserted on a section 440.10 motion. See, e.g., People v. Schrock, __ N.Y.S.2d __, 2010 WL 1817973, *1 (4th Dep't May 7, 2010); People v. Ortega, 70 A.D.3d 416, 417, 896 N.Y.S.2d 308, 310 (1st Dep't 2010); People v. Bumbray, 63 A.D.3d 412, 412, 879 N.Y.S.2d 332, 332 (1st Dep't 2009).

suppression ruling constituted ineffective assistance. (Land 440.10
Aff. at ¶¶ 27-28). However, this claim was denied because it was
based on the record of the hearing and therefore was not a proper
subject of a section 440.10 motion. (Nov. 12, 2003 Order at 2-3).
There is no indication in the record that petitioner sought leave
to appeal this decision to the Appellate Division. See N.Y. Crim.
Proc. Law § 450.15(1) (authorizing defendants to seek leave to
appeal denials of § 440.10 motions in non-capital cases to
intermediate appellate court). Therefore, as petitioner has not
presented this component of his ineffective-assistance claim to the
highest state court that is capable of reviewing it, he has not
exhausted it. Cotto, 331 F.3d at 237; Grey, 933 F.2d at 119-20.


Petitioner also raised the ineffectiveness of his trial
counsel in his pro se and supplemental submissions in support of
his motion to set aside his verdict pursuant to N.Y. Crim. Proc.
Law § 330.30, but these claims targeted other aspects of his
counsel's purported ineffectiveness and therefore do not constitute
exhaustion of his current claims. In his pro se filing, petitioner
argued that his trial counsel had been ineffective because he
failed to call two witnesses with "first hand knowledge of the
entire incident," presumably referring to Ms. McAllister and her
sister. (See Aff. of Eric Brewer in Supp. of Mot. to Set Aside

59

Verdict and for a New Trial CPL 330.30, ¶¶ 7, 23). In a supplemental filing submitted by his state appellate counsel, petitioner contended that his trial counsel had improperly allowed the introduction of hearsay testimony at trial and failed to object to the introduction of expert testimony by Detective Stokes. (Land 330.30 Aff. at ¶¶ 6-10). These claims were not premised on the same factual bases as petitioner's current ineffective-assistance claims, and therefore he cannot rely on them to satisfy the exhaustion requirement. See, e.g., Dorsey v. Kelly, 112 F.3d 50, 52-53 (2d Cir. 1997) (noting that to satisfy exhaustion requirement petitioner must articulate the same factual basis for Sixth Amendment claim in state court and habeas petition); Caballero v. Keane, 42 F.3d 738, 740-41 (2d Cir. 1994) (holding that if habeas court is presented with an allegation of counsel's ineffectiveness that "fundamentally alter[s]" the ineffective-assistance claim raised in state court, petitioner has not satisfied exhaustion requirement); Sanford v. Senkowski, 791 F. Supp. 66, 68-69 (E.D.N.Y. 1992).

In any event, even if the ineffective-assistance claims raised in petitioner's section 330.30 motion had paralleled those that he currently presses, he could not satisfy the exhaustion requirement. As noted, a section 330.30 ruling is incorporated in the final

judgment, and petitioner was required to challenge that ruling on his direct appeal to the Appellate Division and then on his leave application. Since he did not even mention any aspect of his Sixth Amendment claim in his leave application, he failed to exhaust his remedies with respect to this claim in any of its variations.

Although unexhausted, we must deem several aspects of petitioner's ineffective-assistance claim -- those targeting counsel's failure to raise a coercion claim, counsel's performance at the suppression hearing and the quality of the defense presented at trial -- to be exhausted yet procedurally barred, since Brewer would be unable to raise these claims in state court at this juncture. See Grey, 933 F.2d at 120; Bossett, 41 F.3d at 828. Brewer has already filed his only request for leave to appeal his conviction to the Court of Appeals, and the deadline for seeking reconsideration of the denial of that request has long expired. Moreover, petitioner would be unable to raise his claim regarding his counsel's failure to argue that his statement to the police was the product of coercion on a motion to vacate his judgment pursuant to N.Y. Crim. Proc. Law § 440.10, as this claim has already been rejected on its merits by the Appellate Division. Brewer, 28 A.D.3d

at 266, 812 N.Y.S.2d at 104; N.Y. Crim. Proc. Law § 440.10(2)(a).[16]
Petitioner's claims targeting his attorney's performance at the
suppression hearing and the quality of the defense presented at
trial would likewise be barred from review on a § 440.10 motion
because they are based on facts in the record. See N.Y. Crim. Proc.
Law § 440.10(2)(c). In short, petitioner is now unable to assert
these components of his ineffective-assistance claim in state
court, which triggers procedural-default analysis.

Petitioner cannot satisfy either procedural-default exception
to permit us to review these aspects of his ineffective-assistance
claim -- that is, he cannot demonstrate cause for his default and
prejudice or otherwise show that failure to consider his claim
would result in a fundamental miscarriage of justice. Petitioner
does not assert that he was prevented from raising his ineffective-

---

[16] As already noted, the Appellate Division did not
explicitly address petitioner's related claim that his attorney
had failed to consult with him, quite possibly because it was
part of a discussion that principally targeted counsel's conduct
at the suppression hearing. (It is only in the current petition
that Brewer clearly articulates this criticism separately). This
claim is unexhausted because petitioner failed to present it for
review in his leave application. However, since Brewer could
potentially raise it in a successive section 440.10 motion, it is
not procedurally defaulted. Nevertheless, as we discuss below,
the claim is wholly without merit, and therefore we dismiss it on
that basis pursuant to 28 U.S.C. § 2254(b)(2). See infra pp. 77-
78.

assistance claims in a request for leave to appeal the denial of his section 440.10 motion or in his request to the Court of Appeals for leave to appeal on his direct appeal.[17] Indeed, as there is no reason to believe that he was barred from doing so, he cannot demonstrate cause. Moreover, Brewer offers no new evidence of his innocence to contradict the overwhelming evidence of his guilt that was introduced at trial. Therefore, Brewer's ineffective-assistance claims are procedurally barred from habeas review.

    In any event, petitioner's ineffective-assistance claims do not support granting him the relief that he seeks. To demonstrate a violation of the constitutional right to the effective assistance of counsel, a petitioner must show that his lawyer's performance was "so defective that 'counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment' and that counsel's errors were 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Brown v. Artuz, 124 F.3d 73, 79 (2d Cir. 1997) (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)). Accord, e.g., Bierenbaum v. Graham, __ F.3d

---

    [17] As previously discussed, although petitioner could theoretically demonstrate cause for his default based on the ineffective assistance of counsel, he would need to have raised and exhausted a Sixth Amendment claim in state court premised on the ineffective assistance of his state appellate counsel, which he has not done. See supra n.10, p. 38.

__, 2010 WL 2036951, *12 (2d Cir. May 25, 2010). As summarized in

Brown:

>     To satisfy the first, or "performance," prong, the
>     defendant must show that counsel's performance was
>     "outside the wide range of professionally competent
>     assistance," and to satisfy the second, or "prejudice,"
>     prong, the defendant must show that "there is a
>     reasonable probability that, but for counsel's
>     unprofessional errors, the result of the proceeding would
>     have been different."

Id. at 79-80 (quoting Strickland, 466 U.S. at 690, 694); accord,

e.g., Bierenbaum, 2010 WL 2036951, at *12; Palacios v. Burge, 589

F.3d 556, 561 (2d Cir. 2009); Henry v. Poole, 409 F.3d 48, 62-64

(2d Cir. 2005).

    It bears emphasis that the Strickland standard is quite

deferential, and that a claim of constitutional dimension does not

arise unless a lawyer's error is so egregious as to amount to a

failure to provide minimal professional representation. Thus, a

habeas court weighing an ineffective-assistance claim "must judge

the reasonableness of counsel's challenged conduct on the facts of

the particular case, viewed as of the time of counsel's conduct,"

and must "determine whether, in light of all the circumstances,

[counsel's] identified acts or omissions were outside the wide

range of professionally competent assistance." Strickland, 466 U.S.

64

at 690; accord, e.g., Loliscio v. Goord, 263 F.3d 178, 192 (2d Cir. 2001). In making this determination, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690.

The burden of proving prejudice is equally onerous. As noted, the petitioner must demonstrate "a reasonable probability" that, but for counsel's unprofessional errors, the result of the proceeding would have been different. "A reasonable probability is one sufficient to undermine confidence in the outcome of the trial or appeal." Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001) (citing Strickland, 466 U.S. at 694). Accord Bierenbaum, 2010 WL 2036951, at *12.

The first aspect of petitioner's ineffective-assistance claim targets his attorney's performance at the suppression hearing and his failure to seek to re-open that hearing following the denial of his suppression motion. This claim lacks evidentiary support and cannot sustain petitioner's request for habeas relief.

First, petitioner claims in a conclusory manner that his attorney did not "properly argue" that his arrest was unlawful

65

during his suppression hearing. (Pet. at ¶ 13(v)(A)). However, petitioner does not explain in what respect his counsel's argument was deficient, or what additional evidence or arguments should have been presented on his behalf. We note that at the suppression hearing Brewer's attorney offered a summation in which he disputed the existence of probable cause for the officers to approach and pursue him. (H. Tr. 77-83). Having failed to identify any specific arguments or evidence that petitioner contends were improperly omitted from the hearing, he cannot establish that his counsel's performance was deficient under the demanding Strickland standard. See Gomez v. Duncan, 2004 WL 119360, *32 (S.D.N.Y. Jan. 27, 2004) (conclusory allegation about counsel's failure to introduce unspecified evidence does not satisfy Strickland standard) (citing cases).

Moreover, "[w]here defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." Kimmelman v. Morrison, 477 U.S. 365, 375 (1986). Petitioner has failed to show any basis for a valid Fourth Amendment claim.

Brewer alleges that he was "pursued and detained by the [p]olice [o]fficers in the absence of any reasonable or probable cause for suspicion in violation of the Fourth Amendment." (Pet. at ¶ 13(i). See also Pet. at ¶ 13(v)(A)). However, the Supreme Court has held that the Fourth Amendment permits a police officer to approach a citizen on a public street and conduct a "brief, investigatory stop" based on "reasonable, articulable suspicion that criminal activity is afoot." Illinois v. Wardlow, 528 U.S. 119, 123 (2000) (citing Terry v. Ohio, 392 U.S. 1, 30 (1968)). An officer need only offer "a minimal level of objective justification for making the stop" to establish the existence of reasonable suspicion. Id. (citing United States v. Sokolow, 490 U.S. 1, 7 (1989)). Moreover, "nervous, evasive behavior" such as "unprovoked flight upon noticing the police" can contribute to the existence of reasonable suspicion. Id. at 124.

In petitioner's case, the police officers testified that they had observed him arguing with a woman and flailing his arms around the woman's face, while wearing a shirt that appeared to have blood stains on it. (Tr. 7-9). When Brewer and the woman saw the uniformed officers exit their police cruiser and approach them, they got into a car and drove away. (Tr. 10, 98). The officers pursued Brewer, first in their cruiser with its lights and sirens

67

on, and later on foot, until one of the officers observed Brewer produce and discard a gun, which established probable cause to arrest him on a weapons-possession charge. (See Tr. 11-15, 96-102). Petitioner has not demonstrated how this course of events violated his Fourth Amendment rights, and indeed the officers' pursuit of Brewer appears to be justified by applicable Supreme Court precedent. Therefore, Brewer cannot establish the requisite Fourth Amendment violation to support this aspect of his ineffective-assistance claim.

Additionally, petitioner alleges that his trial counsel was ineffective in failing to request that the suppression hearing be re-opened after he viewed the stained shirt that petitioner was wearing when he was arrested. (Pet'r's Reply Opp'n at ¶ 17). Petitioner claims that "the stain on the shirt could not clearly be defined as blood", and he argues that this observation called into question the police officers' basis for approaching him and his girlfriend. (Id. at ¶¶ 12-13).[18]

_____

[18] Petitioner also asserts that his trial counsel was ineffective because he failed to seek a mistrial after the shirt was introduced into evidence and the trial judge stated, in response to defense counsel's request for an adjournment to seek reconsideration of the suppression motion, that "the damage is done". (Pet'r's Reply Opp'n at ¶ 17). As we noted above, the trial judge's remark merely indicated that if the hearing judge were to reverse his decision on petitioner's suppression motion

In fact, petitioner's counsel did request that the trial judge re-open the suppression hearing after the shirt had been introduced into evidence. Upon being instructed that such a request could only be made to the hearing judge, counsel unsuccessfully requested an adjournment of the trial to present his request to Justice Solomon. (Tr. 115-17). Although there is no indication in the record that the attorney subsequently sought to re-open the hearing before Justice Solomon, a decision not to do so would not have been an unreasonable tactical choice, which means that petitioner cannot rely on it to satisfy the first prong of the Strickland standard. See, e.g., Henry, 409 F.3d at 63 (citing Strickland, 466 U.S. at 689-90).

Among the potential tactical justifications for declining to seek reconsideration of the suppression motion would have been a desire on the attorney's part to avoid diverting his focus from the on-going trial to press what he likely viewed to be a meritless reconsideration request. Indeed, defense counsel no doubt

---

targeting certain items of physical evidence that had already been shown to the jury, a mistrial would have to be declared. See supra n.7, p. 32. However, as there is no record evidence indicating that the hearing judge reversed his decision on the suppression motion, there was no basis for trial counsel to seek a mistrial based on the introduction of this evidence, and therefore his failure to do so plainly did not constitute ineffective assistance of counsel.

recognized that Justice Solomon had not relied on the appearance of the stain on petitioner's shirt in denying the suppression motion (especially given the fact that the shirt was not introduced into evidence at the hearing). Rather, the hearing judge focused on the officers' testimony about their perception of the stain prior to approaching petitioner and his girlfriend. Although arguably the appearance of the shirt at trial could have called into question the credibility of the officers' testimony, petitioner's trial was held nearly four months after his arrest, and the stain may well have faded in the intervening time, thereby reducing the shirt's probative value.

Additionally, petitioner's attorney may have concluded that it was more beneficial to petitioner's case to allow the shirt to remain in evidence than to renew his suppression motion. If petitioner is correct that the appearance of the stain at trial suggested that the officers could not have seen it from a distance or reasonably believed it to be blood, contrary to their testimony, his attorney may have calculated that allowing the jurors to compare their observation of the shirt to the officers' testimony undermined the officers' credibility and bolstered petitioner's case.

70

Likewise, counsel may have determined that allowing the shirt to remain in evidence supported petitioner's account of the circumstances surrounding his arrest. After the introduction of the shirt into evidence, petitioner testified that following his arrest he was assaulted in the back of a police car by an unidentified police officer, and that during the assault he bled onto the front of his shirt. (Tr. 178). It would have been reasonable for petitioner's counsel to refrain from seeking to re-open the suppression hearing in the hopes that the jury would conclude that the stain on the shirt was consistent with petitioner's account, thereby enhancing his credibility.

In short, even if petitioner's attorney refrained from seeking to re-open the suppression hearing, there were tactical justifications for doing so, and as such we cannot conclude that his decision was unreasonable. Moreover, especially in light of the slim prospects for success of such a reconsideration request, petitioner cannot satisfy the prejudice prong of the Strickland standard.

Turning to the second aspect of Brewer's ineffective-assistance claim, he contends that his trial attorney failed to argue that his statement to the police was coerced. (Pet. at ¶

71

13(v)(B). During his summation at the suppression hearing, defense counsel focused on the purported lack of probable cause to support petitioner's arrest as a basis for excluding items of physical evidence that were seized from petitioner upon his arrest. (H. Tr. 77-83). At the conclusion of this argument, the hearing judge asked counsel whether he had anything to argue regarding the admissibility of Mr. Brewer's statement to the police. (H. Tr. 83). Defense counsel said that his client "has told me that the statement was coerced out of him" and that he had "more or less discussed that" with Mr. Brewer but that he did not believe it to be a "bona fide issue in the case because he was in the precinct for a relatively short period of time and there was a female officer involved." (H. Tr. 83-84). As a result, counsel stated that "I do not believe it's a valid issue that I'm going to present to this court." (Id.).[19]

Counsel's decision to refrain from raising what he considered to be a meritless Fifth Amendment claim based on the facts of petitioner's case did not constitute an unreasonable decision and

_____

[19] Despite this concession that the voluntariness of petitioner's statement was not an issue in the case, the hearing judge issued findings of fact and conclusions of law regarding the voluntariness of the statement, determining that "the People have proved the voluntariness of the defendant's statement beyond a reasonable doubt." (H. Tr. 103).

therefore cannot support petitioner's request for habeas relief. See Custodio v. United States, 945 F. Supp. 575, 580 (S.D.N.Y. 1996) (attorney's strategic decision to only raise meritorious arguments did not constitute ineffective assistance of counsel) (citing Strickland, 466 U.S. at 690). Accord United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999). We note that the failure to argue coercion was not the product of inadvertence, but rather a determination that such a claim was at odds with the evidence at the suppression hearing. Cf. Kimmelman, 477 U.S. at 385 (deeming attorney's failure to file suppression motion based on his failure to conduct any pretrial discovery, as opposed to a strategic decision, as unreasonable under first aspect of Strickland standard). This opinion was borne out by Brewer's trial testimony, in which he admitted that he was read his Miranda rights prior to speaking to the police, and that he initialed a form indicating that he had been read his rights. (See Tr. 30-32, 226). Moreover, his cross-examination revealed significant tension between his description of his interactions with the police following his arrest and the record evidence. (See, e.g., Tr. 207-08 (Brewer claimed that he made a statement to police officers after 11:00 P.M. on the night of his arrest, but the statement lists the time that it was given as 8:25 P.M.), Tr. 227-28 (Brewer reiterated his statement to officer Balatoni the day after his arrest, despite

73

having learned that the police were no longer holding his girlfriend and her sister)). Brewer's attorney referred to at least one of these discrepancies -- the short amount of time that petitioner spent at the precinct -- in explaining his reluctance to raise a Fifth Amendment claim on petitioner's behalf during the suppression hearing. (H. Tr. 84). In light of the tension between Mr. Brewer's account of his experience with the police following his arrest and facts in the record, we cannot conclude that it was unreasonable for the lawyer to decline to seek suppression of Brewer's statement on Fifth Amendment grounds.

Additionally, there is no reason to believe that the verdict in petitioner's trial would have differed absent introduction of his statement to the police, and therefore petitioner cannot satisfy the prejudice prong of the Strickland standard. There was ample evidence introduced at trial for a rational fact-finder to find that petitioner was guilty of third-degree criminal weapons-possession. This evidence included the testimony of a police officer who stated that he saw petitioner discard a loaded gun from his waistband, the testimony of a ballistics expert who testified that the weapon and ammunition recovered from petitioner were operable, and the introduction into evidence of the gun itself. In the face of this evidence, there is no reason to believe that the

exclusion of petitioner's statement to police would have altered the jury's verdict.

Petitioner's next ineffective-assistance claim alleges that his trial counsel failed "to raise any coherent defense at trial." (Pet. at ¶ 13(v)(C)). This conclusory claim, which does not cite any evidence or arguments that counsel failed to raise, is insufficient to establish the ineffectiveness of counsel under the demanding Strickland standard. Indeed, we are to presume that counsel functioned effectively. Strickland, 466 U.S. at 690. That presumption cannot be overcome by "[s]elf-serving conclusory allegations" by the petitioner to the contrary. See Young v. United States, 2010 WL 54757, *4 (S.D.N.Y. Jan. 6, 2010) (citing United States v. Torres, 129 F.3d 710, 715-17 (2d Cir. 1997)).

Moreover, petitioner's allegation that his attorney failed to present any effective defense at trial is belied by the record. In addition to cross-examining the witnesses who were called by the State, the attorney offered Brewer's testimony on his own behalf and delivered a closing argument. (See Tr. 35-53, 56, 75-88, 90, 118-28, 145-47, 163-86, 228-29, 248-61). He argued to the jury, in substance, that the State's version of the events surrounding Brewer's arrest was illogical, citing the purported inability of

the officers to recognize the stain on petitioner's shirt as blood as they drove by, the inability of petitioner to run with a gun in the waistband of his sweat pants, and the implausibility of the officer's account that Brewer kept the handgun in the waistband of his pants while reaching for a door and then reached for the gun without the officer taking action. (Tr. 250, 251-53, 259-60). Counsel also argued that Brewer had no intention of harming Mr. McAllister, noting that the two men had a relatively cordial relationship and that their argument earlier in the day of petitioner's arrest was not especially serious. (Tr. 257-59). The effectiveness of these efforts by counsel is evidenced by the fact that the jury acquitted Brewer of the more serious of the two charges on which he was indicted, second-degree criminal possession of a weapon. (Tr. 325). Plainly, this aspect of petitioner's claim does not establish that he received ineffective assistance of counsel.

Finally, petitioner contends that his attorney neglected to properly investigate his case or consult with him prior to trial. (Pet. at ¶ 13(v)(D)). Neither of these allegations support affording petitioner habeas relief.

An attorney's failure to investigate his client's case can

constitute ineffective assistance of counsel. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. However, conclusory allegations regarding an attorney's failure to conduct an investigation, absent a showing of what evidence an investigation would have yielded and the benefit of such evidence to petitioner's case, are insufficient to overcome the presumption that counsel offered effective representation. See, e.g., Gomez, 2004 WL 119360, at *30; Polanco v. United States, 2000 WL 1072303, *10 (S.D.N.Y. Aug. 3, 2000); Matura v. United States, 875 F. Supp. 235, 238 (S.D.N.Y. 1995).

Likewise, "[a]dequate consultation between counsel and client is essential to the competent representation of a criminal defendant" and if an attorney's failure to engage in such consultation "materially hampers the fashioning of a defense", the attorney's performance may be considered constitutionally insufficient. Jelinek v. Costello, 247 F. Supp. 2d 212, 272-73 (E.D.N.Y. 2003) (citing, inter alia, Lindstadt v. Keane, 239 F.3d 191, 200 (2d Cir. 2001)). In presenting this aspect of his ineffective-assistance claim, petitioner offers no details regarding the nature and extent of the communications that he had

with his attorney.[20] He also fails to cite any evidence or arguments that he could have offered to his attorney had he been afforded the opportunity for additional consultation. We note that the record indicates that petitioner's attorney did discuss the facts of his case with him. (See H. Tr. 83-84 (Brewer discussed with his attorney his allegation that he was coerced into making statement to police); Tr. 150 (counsel attempted to introduce into evidence contents of a phone conversation between Brewer and McAllister, based on Brewer's description of the call)). As such, we cannot determine that counsel's purported failure to consult with petitioner had any bearing on his ability to mount a defense on Brewer's behalf, and indeed counsel did successfully defend against the more serious of the two charges facing petitioner. Therefore, this contention cannot sustain petitioner's claim for habeas relief.

---

[20] We note that, prior to the hearing on his suppression motion, petitioner requested an adjournment to seek substitute counsel in part because of his contention that trial counsel had met with him only once prior to the suppression hearing. However, the hearing judge noted that the attorney had consulted with petitioner in the past and that they would have time to talk once the case was on trial, and so the adjournment request was denied. (H. Tr. 5-7). Petitioner renewed his request for an adjournment of the case to seek substitute counsel prior to jury selection, again stating that he had only seen his attorney two or three times, but that request was also denied. (Tr. 3-11).

In sum, none of petitioner's ineffective-assistance claims suffice to establish a violation of his Sixth Amendment rights under the demanding <u>Strickland</u> standard. As such, even if petitioner's ineffective-assistance claims were not procedurally barred from review on this petition, they would not support an award of habeas relief.

<u>CONCLUSION</u>

For the reasons noted, we recommend that the writ be denied and the petition dismissed with prejudice. We further recommend denial of a certificate of appealability, since the petition raises no issue that warrants appellate review.

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. <u>See</u> <u>also</u> Fed. R. Civ. P. 6(a), 6(d). Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Sidney H. Stein, Room 1010, and to the chambers of the undersigned, Room 1670, U.S. Courthouse, 500 Pearl Street, New York, New York 10007. Failure to file timely objections may

constitute a waiver of those objections both in the District Court

and on later appeal to the United States Court of Appeals. Small v.

Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989);

Thomas v. Arn, 474 U.S. 140, 150-55 (1985), reh'g denied, 474 U.S.

1111 (1986).


Dated: New York, New York
       June 11, 2010

_____

MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE



Copies of the foregoing Report and Recommendation have been mailed
today to:

Mr. Eric Brewer
1450 Parkchester Road
Apartment 1H
Bronx, NY 10462

Alyson J. Gill, Esq.
Luke Martland, Esq.
Office of the Attorney General
   of the State of New York
120 Broadway
New York, NY 10271